UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Civil Action No. 3:23-cv-1607

DOROTHY WASHINGTON

*in her individual capacity and as Administrator of the Estate of*

BRENDA LEE RAWLS

*Plaintiff*

-vs-

CITY OF BRIDGEPORT

*Defendant*

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff sues Defendant under 42 U.S.C. § 1983, for violation of her civil rights, discrimination based on race, and unequal treatment under the law.  She also sues Defendant for intentional and negligent infliction of emotional distress and negligence.  In support of her claims she alleges:

### INTRODUCTION

1. Brenda Lee Rawls was denied justice because she was black.  Indeed, she was denied a proper and thorough investigation into her death because of the color of her skin.

2. What she got was a pseudo-death investigation riddled with negligence and/or intentional mistakes.

3. She was denied the same treatment under the law that a white woman would have been given.

4. She was intentionally discriminated against due to her race in violation of Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment.

5. And she was denied these rights and privileges by the Defendant, acting under color of state law.

6. Through this lawsuit she seeks redress for the deprivation of her federal constitutional and federal statutory rights, for the Defendant's negligence, along with their intentional or negligent infliction of emotional distress.

7. Indeed, Title 42 of the United States Code, § 1983 provides, *inter alia*: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

8. The Defendant is depriving the Plaintiff of her rights, privileges and immunities secured by the Constitution and laws and is liable to the injured Plaintiff in an action at law, suit in equity, and other proper proceedings for redress.

**JURISDICTION**

9. This action under the Federal Civil Rights Act, 42 U.S.C. § 1983, seeks redress and relief under color of state law, of rights, privileges and immunities secured to the Plaintiffs by the Constitution of the United States, particularly, the Fourteenth amendments thereto.

10. Under 28 U.S.C. § § 2201 and 2202, this Court, in a case of actual controversy within its jurisdiction, may declare the rights of a plaintiff seeking such a declaration.

11. This Court has personal and subject matter jurisdiction over the case under 28 U.S.C. § 1331 and 42 U.S.C. § 1988.

12. This Court has supplemental jurisdiction over any other claim pursuant to 28 U.S.C. 1367(a).

## VENUE

13. Venue under 28 U.S.C. § 1391(b) is proper without regard to jurisdictional amount or diversity of citizenship, in that the breach took place in this district.

## JURY DEMAND

14. Plaintiff respectfully demands a trial by jury on all issues in the matter pursuant to Fed. R.Civ. P. 38(b).

## PARTIES

15. Plaintiff, Dorothy Washington, is an individual over the age of 18.

16. She is currently and at all times relevant herein, a citizen and resident of the State of Connecticut.

17. Plaintiff is the sister of Brenda Lee Rawals (hereinafter referred to as "Brenda" or the "Decedent"), who died on December 12, 2021.

18. Plaintiff is the Personal Representative and administrator of Brenda's Estate and is authorized to pursue the claims set forth herein that are taken up on her behalf.

19. Plaintiff is suing the Defendant in her capacity as administrator of Brenda's Estate and personally as her mother.

20. Defendant, City of Bridgeport, Connecticut (hereinafter referred to as "City") is a municipal corporation duly organized and existing under the laws of Connecticut and is located

in the State of Connecticut. The City operates and controls a police department, commonly known as the Bridgeport Police Department.

## GENERAL ALLEGATIONS

21. Brenda was found dead a couple houses down from her own home on December 12, 2021.

22. She was found dead after meeting up with a man that resided there.

23. The Defendant never arrested this individual.

24. The Defendant failed to conduct a meaningful interview of this individual.

25. The Defendants failed to properly investigate him or his suspicious story.

26. The Defendant failed to consider or investigate any suspect in her death at all.

27. The Defendant failed to investigate at all.

28. The Defendant failed to properly survey the crime scene.

29. The Defendant failed to investigate or survey Brenda's own home. If they had, they should have noticed blood on her front screen door.

30. Unfortunately, the Defendant did not send in a crime scene investigation team to Brenda's home or the home where she died.

31. The Bridgeport police department admitted to the Plaintiff that they did not check or investigate Brenda's residence or the residence she was found in, and further admitted that this lack of investigatory work was not in the police incident report either.

32. Simply put, Defendant did not investigate or collect any meaningful evidence at the crime scene or Brenda's home.

33.     For example, Brenda's clothes were still at the location where she died and with the man she was found dead with when the Plaintiff went looking for her sister on December 14, 2021.

34.     Why and how could the Bridgeport Police Department leave Brenda's clothes with the man who last saw her alive when they could not – at least on December 12, 2021 – have known her cause of death or circumstances surrounding her death.

35.     In other words, the Police left Brenda's clothes with a person of interest in her death.

36.     The Defendant also failed to notify the Plaintiff or any of loved one or next of kin that Brenda died.

37.     In fact, the person who told the family about Brenda's death was the individual that lived at the location where Brenda died and the prime suspect in the case.

38.     He told Plaintiff that her sister had died (as he laughed) and handed Plaintiff her dead sister's clothes that the Bridgeport Police never took to investigate or catalog.

39.     After learning about Brenda's death the Plaintiff and Brenda's family called the Bridgeport Police.

40.     They asked to meet with the officer or officers investigating their sister Brenda's death and a meeting was scheduled for December 15, 2021.

41.     The Plaintiff and Brenda's family waited *and* waited for police to arrive on December 15, 2021, but nobody from the Defendant City's Police Department ever showed up.

42.     Based upon information and belief, no physical evidence was submitted for forensic analysis before January 5, 2022.

43. Based upon information and belief, a chain of custody issue has been intentionally and/or negligently created by the Bridgeport Police Department.

44. The Defendants also refused to take into account the numerous suspicious circumstances surrounding Brenda' death, including the blood at her home and front screen door, her clothes, the state of her home and the state of the home she was found dead within.

45. In fact, they didn't even detain the man that she was with when she died.

46. And nowhere in the police report does it note that officers mention detaining him for questioning – despite him being the last person to see Brenda alive.

47. The Bridgeport Police have also failed to review the contents of her cell phone.

48. The Bridgeport Police failed to perform a rape kit or even consider she was drugged, raped, and/or killed by the man that last saw her alive.

49. The police even botched the death notification to her family.

50. Bridgeport Police failed to properly research, track down, and notify Brenda's family and next of kin.

51. The Police have failed to update Brenda's family from day one, and continue to fail in updating her family even to this day.

52. The Plaintiff and family claim this is because the investigation was a sham, and Bridgeport Police never properly investigated her death.

53. The Police have failed to share their investigatory findings, and failed to share any key information, reports, and lab results stemming from Lauren's death investigation.

54. Other members of the Bridgeport Police Department have admitted that the investigation and death notification was not conducted properly and according to Department policy.

55. On January 30, 2022, in a press release by Mayor Ganim, he expressed his condolences to Brenda's family and suspended two police officers, *inter alia* for "failure to follow police policy."

56. The policies, usages, practices, procedures, and rules of the City and Bridgeport Police Department included, but were not limited to, negligently and/or intentionally failing to properly investigate the death of black and African Americans and negligently and/or intentionally failing to properly and timely notify a decedent's family or next of kin of their loved ones death.

57. In addition, the City and the Police Department engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees, which was a moving force behind the violation of Plaintiff's rights as described herein.

58. The Defendant City's lack of training for its Police Department and having a de facto policy of negligently and/or intentionally failing to properly investigate the death of black and African Americans and negligently and/or intentionally failing to properly and timely notify a decedent's family or next of kin of their loved ones death is a violation of the Decedent's civil rights.

59. Brenda lived in a predominantly low income, African American and black neighborhood.

60. Brenda is black and African American.

61. The Bridgeport Police Department failed to properly investigate Brenda's death and failed to properly and timely notify her family of her passing.

62. Simply put, the Defendant intentionally conducted a pseudo death investigation into the death of Brenda Lee Rawls because she was black and failed to properly notify her loved ones of her passing because she was black.

63. Defendant's failures were because of Brenda's race.

64. More specifically, the Defendant's actions were motivated by an intent to discriminate based on race.

65. Plaintiff has been damaged as a result of Defendant's intentional discrimination.

**COUNT I : 42 U.S.C. § 1983**

**EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT**

66. Plaintiff, re-alleges and reincorporates the allegations in paragraphs 1 through 65.

67. The City's Police Department acted with deliberate indifference to the deceased's rights.

68. American citizens, including the Plaintiff and Decedent, are entitled to equal protection under the law pursuant to the Fourteenth Amendment of the U.S. Constitution.

69. As such, police officers are required to conduct death investigations involving black and African American descendants with equal effort as death investigations involving Caucasian and/or non-black or African American descendants.

70. Put another way, police officers are not allowed to intentionally conduct a pseudo-death investigation due to the fact that the decedent, here Brenda Lee Rawls is black.

71. Indeed, the Police and municipality policy caused this constitutional tort.

72. Here, the Police Department and individually named officers deprived the Plaintiff of a constitutional right.

73. The right of equal protection under the law has long been recognized by courts across the United States of America, including the right of citizens not to be treated worse by police officers due to their race.

74. Plaintiff was denied the right of equal protection under the law due to the actions and inactions of the Defendant City's Police Department and the individually named officers in conducting her death investigation.

75. Indeed, Defendants failed to provide even the basic minimum effort of a proper death investigation with regard to the investigation of the death of the Decedent.

76. The Police Department has a policy and custom of allowing such deprivation.

77. The Defendant City and Police denied the Plaintiff equal protection under the law because Plaintiff and Decedent are both black / African American.

78. More specifically, Defendant failed to (i) conduct a timely or meaningful investigation into Brenda's death; (ii) conduct a meaningful interview of the man Brenda was last seen alive with; (iii) follow up and/or investigate the validity of this man's statements; (iv) follow up and/or investigate conflicting stories from this man and Brenda's family; (v) follow up and/or timely collect key pieces of evidence, including, but not limited to, blood at her home, and on her front screen door, her clothes, her cell phone, any food or beverages, cups or glassware she consumed shortly before her death; (vi) follow up and/or investigate the suspicious circumstances surrounding Brenda' death.

79. In other words, Defendant intentionally and/or negligently conducted a pseudo-death investigation into Brenda's death due to the fact that the Decedent was black.

80. The Bridgeport Police Department and named Defendant also failed to properly and timely notify her family of her passing.

81. Defendant's failures were because of Brenda's race, and were motivated by an intent to discriminate, as evidenced by, *inter alia*, Defendant's pseudo-death investigation, their failure to properly notify Brenda's family about heer death, and the fact that Police never showed up to the December 15, 2021 meeting.

82. The Defendant and Bridgeport police officers were acting or purporting to act in the performance of their official duties, and as such were acting under color of law.

83. Because of the Defendant's actions, Plaintiff and her family have suffered damages, including, but not limited to, pain, suffering, emotional distress, and loss of enjoyment of life.

84. If Plaintiff prevails, she is entitled to an award of attorney's fees.

**WHEREFORE**, Plaintiff prays for judgment in her favor and against the Defendant for damages in excess of $30 million dollars, including actual damages and punitive damages, for the costs incurred herein and expended, for attorneys' fees under 42 U.S.C. §1988, and for such other and further relief as the Court deems just and proper.

<u>**COUNT II: TITLE IV**</u>
**INTENTIONAL RACE DISCRIMINATION**

85. Plaintiff, realleges and reincorporates the allegations in paragraphs 1 through 65.

86. Title VI of the Civil Rights Act of 1964 states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

87. Defendant City receives Federal financial assistance from a number of programs.

88. Plaintiff and Decedent are both African American / black.

89. Defendants are required, *via* Title VI, to conduct death investigations involving black and African American descendants with equal efforts as death investigations involving Caucasian and/or non-African American descendants.

90. Put another way, police officers are not allowed to intentionally conduct a pseudo-death investigation due to the fact that the decedent is black / African American.

91. Indeed, the Police and municipality policy caused this constitutional tort.

92. Defendant failed to provide even the basic minimum effort of a proper death investigation with regard to the investigation of the death of the Decedent.

93. More specifically, Defendant failed to (i) conduct a timely or meaningful investigation into Brenda's death; (ii) conduct a meaningful interview of the man Brenda was last seen alive with; (iii) follow up and/or investigate the validity of this man's statements; (iv) follow up and/or investigate conflicting stories from this man and Brenda's family; (v) follow up and/or timely collect key pieces of evidence, including, but not limited to, blood at her home, and on her front screen door, her clothes, her cell phone, any food or beverages, cups or glassware she consumed shortly before her death; (vi) follow up and/or investigate the suspicious circumstances surrounding Brenda' death.

94. In other words, Defendant intentionally and/or negligently conducted a pseudo-death investigation into Brenda's death due to the fact that the Decedent was black.

95. The Bridgeport Police Department and named Defendant also failed to properly and timely notify her family of her passing.

96. Defendant's failures were because of Brenda's race, and were motivated by an intent to discriminate, as evidenced by, *inter alia*, Defendant's pseudo-death investigation, their

11

failure to properly notify Brenda's family about heer death, and the fact that Police never showed up to the December 15, 2021 meeting.

97. The Defendant and Bridgeport police officers were acting or purporting to act in the performance of their official duties, and as such were acting under color of law.

98. Because of the Defendant's actions, Plaintiff and her family have suffered damages, including, but not limited to, pain, suffering, emotional distress, and loss of enjoyment of life.

99. If Plaintiff prevails, she is entitled to an award of attorney's fees.

**WHEREFORE**, Plaintiff prays for judgment in her favor and against the Defendant for damages in excess of $30 million dollars, including actual damages and punitive damages, for the costs incurred herein and expended, for attorneys' fees under 42 U.S.C. §1988, and for such other and further relief as the Court deems just and proper.

### COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

100. Plaintiff, realleges and reincorporates the allegations in paragraphs 1 through 65.

101. As more particularly set out above, the Defendant's actions were intentional and/or reckless. Defendant and its agents either intended to cause emotional distress or knew, or should have known their conduct was likely to cause such distress.

102. The Defendant's actions were also extreme and outrageous.

103. Defendant's actions were more than mere rudeness, their conduct was so outrageous as to go beyond all bounds of decency and are utterly intolerable in a civilized society.

104. Indeed, Defendant failed to provide even the basic minimum effort of a proper death investigation with regard to the investigation of the death of the Decedent.

105. They also failed to follow proper protocol in conducting their investigation and death notification, including but not limited to, failing to ever notify the Plaintiff or Decedent's loved ones of her death and failing to show up for the December 15, 2021 meeting.

106. More specifically, Defendant failed to (i) conduct a timely or meaningful investigation into Brenda's death; (ii) conduct a meaningful interview of the man Brenda was last seen alive with; (iii) follow up and/or investigate the validity of this man's statements; (iv) follow up and/or investigate conflicting stories from this man and Brenda's family; (v) follow up and/or timely collect key pieces of evidence, including, but not limited to, blood at her home, and on her front screen door, her clothes, her cell phone, any food or beverages, cups or glassware she consumed shortly before her death; (vi) follow up and/or investigate the suspicious circumstances surrounding Brenda' death.

107. The Defendant's conduct, and that of its agent police officers, is and was the cause of the Plaintiff's emotional distress. Indeed, it was this conduct, and not some other factor, that was and is the proximate cause for her emotional distress.

108. The Plaintiff's emotional distress is severe. It resulted in Plaintiff's physical and/or emotional illness, and other substantial harm.

**WHEREFORE**, Plaintiff prays for judgment in her favor and against the Defendant for damages in excess of $30 million dollars, including actual damages and punitive damages, for the costs incurred herein and expended, for attorneys' fees, and for such other and further relief as the Court deems just and proper.

### COUNT IV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

109. Plaintiff, realleges and reincorporates the allegations in paragraphs 1 through 65.

110. The Defendant's conduct created an unreasonable risk of causing the Plaintiff emotional distress.

111. Indeed, Defendant failed to provide even the basic minimum effort of a proper death investigation with regard to the investigation of the death of the Decedent.

112. They also failed to follow proper protocol in conducting their investigation and death notification, including but not limited to, failing to ever notify the Plaintiff or Decedent's loved ones of her death and failing to show up for the December 15, 2021 meeting.

113. More specifically, Defendant failed to (i) conduct a timely or meaningful investigation into Brenda's death; (ii) conduct a meaningful interview of the man Brenda was last seen alive with; (iii) follow up and/or investigate the validity of this man's statements; (iv) follow up and/or investigate conflicting stories from this man and Brenda's family; (v) follow up and/or timely collect key pieces of evidence, including, but not limited to, blood at her home, and on her front screen door, her clothes, her cell phone, any food or beverages, cups or glassware she consumed shortly before her death; (vi) follow up and/or investigate the suspicious circumstances surrounding Brenda' death.

114. The Plaintiff's distress was foreseeable.

115. The emotional distress was severe enough that it might result in illness or bodily harm.

116. The Defendant's conduct, and that of its agent police officers, was the cause of the Plaintiff's distress.

**WHEREFORE**, Plaintiff prays for judgment in her favor and against the Defendant for damages in excess of $30 million dollars, including actual damages and punitive damages, for the costs incurred herein and expended, for attorneys' fees, and for such other and further relief as the Court deems just and proper.

## COUNT V: NEGLIGENCE

117. Plaintiff, realleges and reincorporates the allegations in paragraphs 1 through 65.

118. The Defendant City's Police Department and agent police officers failed to conduct a reasonable death investigation due to their negligence, and failed to properly and timely notify Brenda's family of her death. This negligence has led to harm and damaged the Plaintiff.

119. More specifically, the Defendant City's Police Department and its agent police officers owed a duty of care to Brenda, the Plaintiff, and Brenda's family.

120. This duty of care arises from various sources, including, but not limited to, the police department's general duty to protect public safety, various statutes, laws, rules, regulations, and department procedure and policy.

121. Indeed, as protectors of the public, a key relationship exists between the police and the public, or in this particular case, the Plaintiff and deceased.

122. The Defendant City's Police Department and its agent police officers breached their duty of care and their duties by failing to properly investigate Brenda's death and by otherwise conducting a sham death investigation and failing to notify Brenda's family about her death.

123. They also failed to follow proper protocol in conducting their investigation and death notification.

124. Indeed, Defendant failed to provide even the basic minimum effort of a proper death investigation with regard to the investigation of the death of the Decedent.

125. More specifically, Defendant failed to (i) conduct a timely or meaningful investigation into Brenda's death; (ii) conduct a meaningful interview of the man Brenda was last seen alive with; (iii) follow up and/or investigate the validity of this man's statements; (iv)

15

follow up and/or investigate conflicting stories from this man and Brenda's family; (v) follow up and/or timely collect key pieces of evidence, including, but not limited to, blood at her home, and on her front screen door, her clothes, her cell phone, any food or beverages, cups or glassware she consumed shortly before her death; (vi) follow up and/or investigate the suspicious circumstances surrounding Brenda' death.

126. The above cited actions and omissions deviated from the standard of care expected of a reasonable police department and police officer.

127. The aforementioned breaches and negligence caused the Plaintiff harm and this harm was foreseeable, including, but not limited to no person ever being arrested in Brenda's death, and the family finding out about Brenda's death from the man who last saw her alive, as he laughed in their face, and handed Brenda's clothes to them.

128. The aforementioned breaches and negligence caused emotional distress and physical harm to the Plaintiff.

129. As a direct and proximate result, Plaintiff has incurred damages due to the Defendant City's Police Department and its agent police officers actions and inactions, including, but not limited to, economic and non-economic damages for pain and suffering and emotional distress.

**WHEREFORE**, Plaintiff prays for judgment in her favor and against the Defendant for damages in excess of $30 million dollars, including actual damages and punitive damages, for the costs incurred herein and expended, for attorneys' fees, and for such other and further relief as the Court deems just and proper.

      Respectfully submitted by:

      _____
      Darnell D. Crosland, Esq.
      Crosland Law Group
      1200 Summer Street, Ste 202
      Stamford, Connecticut 06905
      Tel. (203) 921-1782
      Fax (203) 921-1223

      Dated: December 11, 2023