# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOROTHY WASHINGTON, | ) | CASE NO. 3:23-CV-01607 (KAD) |
| *in her individual capacity and as* | ) | |
| *Administrator of the Estate of Brenda Lee* | ) | |
| *Rawls*, | ) | |
| *Plaintiff*, | ) | |
| | ) | February 20, 2025 |
| v. | ) | |
| | | |
| CITY OF BRIDGEPORT, | | |
| *Defendant*. | | |

## MEMORANDUM OF DECISION
## RE: MOTION TO DISMISS [ECF NO. 13]

Kari A. Dooley, United States District Judge:

In December 2021, Brenda Lee Rawls ("Ms. Rawls"), died unexpectedly and tragically. Her family was not notified of her death by the Bridgeport Police Department, and the circumstances under which her family learned of her death only compounded their grief at her passing. Plaintiff Dorothy Washington ("Plaintiff"), both individually and as Administratrix for the Estate of her deceased sister, Brenda Lee Rawls, brings this civil rights action against the City of Bridgeport (the "City" or "Defendant"). The Complaint alleges that the City intentionally discriminated against both Plaintiff and Ms. Rawls on account of their race in violation of the Equal Protection Clause of the Fourteenth Amendment as well as Title VI of the Civil Rights Act, 42 U.S.C § 2000d, in connection with the investigation into the manner and means of Ms. Rawls' death. Plaintiff asserts several state-law claims as well. Defendant filed a motion to dismiss all counts of the Complaint. Plaintiff opposes the motion. Deciding the instant motion does not require the Court to evaluate or opine on the conduct of the police officers alleged in the Complaint, or to vindicate either party's position on the merits of the allegations. The Court is tasked only with deciding the legal sufficiency of the claims as asserted. For the reasons that follow,

Defendant's motion is GRANTED, subject to certain claims being permitted to be reasserted by way of an amended complaint.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Allegations and Procedural History**

The Court accepts as true the allegations in the Complaint, which are summarized as follows. Brenda Lee Rawls, who was an African American woman and a resident of Bridgeport, Connecticut, was found dead in her neighbor's house on December 12, 2021. Compl., ECF No. 1, ¶¶ 21, 60. Ms. Rawls had allegedly met up with a man who resided in the house before she was discovered dead.[1] *Id.* ¶¶ 21–22. The Complaint alleges a plethora of flaws in the investigation conducted by the Bridgeport Police Department ("BPD"): that they failed to meaningfully

---

[1] This man is unidentified in the Complaint. For clarity, the Court hereafter refers to him as the "person of interest."

interview, investigate, or arrest the man with whom Ms. Rawls' body had been found, *id.* ¶¶ 23–27; that they failed to investigate or survey the house where she was found or her own house, where blood was found on her front screen door, *id.* ¶¶ 28–30; that they failed to collect evidence at the scene, including Ms. Rawls' clothes, her cell phone, and any foods or beverages that she consumed before her death, *id.* ¶¶ 32–35, 78; and that they failed to properly safeguard certain evidence, including by leaving Ms. Rawls' clothes with the person of interest who last saw her alive, *id.* ¶¶ 33–35.

The Complaint also alleges that the police failed to notify Plaintiff or any other family members that Ms. Rawls had died. *Id.* ¶¶ 36–37, 80.  The BPD allegedly never contacted Plaintiff or other family members, and Plaintiff only learned that her sister had passed away from the person of interest himself when he gave her back Ms. Rawls' clothes. *Id.* ¶ 38.  After Plaintiff learned that Ms. Rawls had died, she and other family members called the BPD and scheduled a meeting for December 15, 2021. *Id.* ¶¶ 39–40.  However, no one from the BPD ever arrived for the meeting on December 15. *Id.* ¶ 41.  The Complaint alleges that the BPD has continued to shut out Plaintiff and other family members from the investigation into Ms. Rawls' death. *Id.* ¶ 53.

Plaintiff filed the Complaint on December 11, 2023.[2]  She asserts five causes of action against Defendant: a § 1983 violation of the Equal Protection Clause of the Fourteenth Amendment (Count 1); intentional race discrimination in violation of Title VI of the Civil Rights Act (Count 2); intentional infliction of emotional distress (Count 3); negligent infliction of emotional distress (Count 4); and negligence (Count 5).  Defendant has moved to dismiss all claims.  Plaintiff opposes the motion.

---

[2] A similarly situated plaintiff brought a nearly identical complaint on the same date, which is docketed at *Fields v. City of Bridgeport et al*, No. 3:23-CV-1608 (KAD).  The Court addresses the motion to dismiss in the *Fields* case in a separately docketed decision; however, due to the overlapping nature of the allegations, causes of action, and legal issues of both cases, these opinions draw considerably from each other.

**Discussion**

    **Representative Claims**

As an initial matter, it is apparent on the face of the Complaint that Plaintiff, in her representative capacity as Administratrix of Ms. Rawls' estate, seeks to bring claims on her deceased sister's behalf for alleged injuries or constitutional deprivations to Ms. Rawls that occurred after Ms. Rawls' death. There are no allegations in the Complaint that Ms. Rawls had any interactions with the City or the BPD that caused her any injury, constitutional or otherwise, before her death. *See* Compl., ECF No. 1, ¶¶ 22–29, 34, 47–51, 61, 78 (alleging injurious actions committed by Bridgeport police during the investigation into Ms. Rawls' death). In other words, Plaintiff as Administratrix only alleges posthumous injuries on Ms. Rawls' behalf.

Courts that have addressed the issue have generally determined that § 1983 does not encompass claims for post-mortem injuries to a decedent. *See McCain v. Episcopal Hosp.*, 350 F. App'x 602, 604 (3d Cir. 2009) ("§ 1983 does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death." (quotations omitted)); *Soto v. City of Paterson*, No. 18-CV-11311, 2019 WL 4686809, at *3 (D.N.J. Sept. 26, 2019) (limiting plaintiff's representative § 1983 claims to violations that occurred before decedent's death) (collecting cases); *see also Hauptmann v. Wilentz*, 570 F. Supp. 351, 367 n.15 (D.N.J. 1983) ("A person's civil rights cannot be violated once that person has died; thus a cover-up of the circumstances surrounding a person's death cannot violate that person's rights."). The cases Plaintiff cites in opposition are inapposite because they all address wrongful death claims under § 1983, which involved violations of constitutional rights that necessarily took place *before* a person's death (and indeed, resulted in the person's death). *See Carringer v. Rodgers*,

4

331 F.3d 844, 850 n.9 (11th Cir. 2003) (discussing different circuits' theories for wrongful death recovery under § 1983).

This principle applies to Plaintiff's other claims as well. As the Fifth Circuit has held, "[a]fter death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived." *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979). "The argument that a corpse has no civil rights is further strengthened by the treatment of actions involving interference with dead bodies," for which many states, including Connecticut,[3] provide a cause of action, but it belongs to the *survivors* of the decedent: "If the corpse were an entity capable of possessing rights, the action would belong to him or to his personal representative." *Id.* at 840 n.9 (collecting cases).

Therefore, because all of Plaintiff's allegations of wrongdoing occurred after the decedent's death, the Court dismisses all claims asserted by Plaintiff in her representative capacity with prejudice. *See Helmer v. Middaugh*, 191 F. Supp. 2d 283, 285 (N.D.N.Y. 2002) ("Even assuming all of the facts in the favor of the plaintiff, a dead man does not have any constitutional rights. As the allegations . . . are limited to conduct occurring after the death of [the decedent], plaintiff's amended complaint does not allege a viable cause of action . . . ." (citation omitted)), *aff'd*, 159 F. App'x 300 (2d Cir. 2005). The Court next addresses the claims asserted by Plaintiff on her own behalf.

---

[3] *See Del Core v. Mohican Hist. Hous. Assocs.*, 81 Conn. App. 120, 124–25 (2004) (adopting section 868 of the Restatement (Second) of Torts and holding that Connecticut common law recognizes a cause of action for the "negligent interference with the right of a family member to control the proper burial of a deceased"); *see also Ginsberg v. Manchester Mem'l Hosp.*, No. CV-09-5030482-S, 2010 WL 796841, at *2–4 (Conn. Super. Ct. Feb. 2, 2010) (discussing cause of action for negligent interference with dead bodies).

I.    <u>Count 1: Equal Protection Under the Fourteenth Amendment (42 U.S.C. § 1983)</u>

Plaintiff asserts in Count 1 a violation of the Equal Protection Clause of the Fourteenth Amendment for Defendant's (1) failure to properly investigate Ms. Rawls' death, and (2) failure to timely notify Plaintiff of her death.  Compl., ECF No. 1, ¶¶ 68–69, 78, 80–81.  Defendant argues that Plaintiff has failed to adequately plead that the City violated her civil rights under the framework for asserting such claims set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Mot. to Dismiss, ECF No. 13-1, at 9–11.  The Court agrees with Defendant.

"Section 1983[4] gives a cause of action to any person who has been deprived of his constitutional rights, privileges or immunities under color of state law."  *Powell v. Workmen's Comp. Bd. of State of N.Y.*, 327 F.2d 131, 135 (2d Cir. 1964).  The Fourteenth Amendment to the U.S. Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439 (1985).  To state a claim under the Equal Protection Clause under a race-based theory, the plaintiff must allege that a government actor intentionally discriminated against her on the basis of her race.  *Brown v. City of Oneonta*, 221 F.3d 329, 336–37 (2d Cir. 2000); *see Gant ex rel. Gant v. Wallingford Bd. of Educ*., 195 F.3d 134, 141 (2d Cir. 1999) ("The ultimate inquiry, of course, is one of discriminatory purpose on the part of the defendant himself.  Thus, to establish a violation of the Equal Protection Clause . . ., a plaintiff must show that . . . the defendant intended the discrimination to occur.").  "Discriminatory purpose

---

[4] Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."  42 U.S.C. § 1983.

'implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'" *Hayden v. County of Nassau*, 180 F.3d 42, 50 (2d Cir. 1999) (citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979)).  "[C]laims of race-based discrimination under the Equal Protection Clause . . . require that intentional discrimination be alleged in a non-conclusory fashion." *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)).

Plaintiff asserts her Equal Protection claim against only a municipality (the City of Bridgeport), and thus, her claim is evaluated under the standard set forth in *Monell.*  In *Monell*, the Supreme Court determined that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  436 U.S. at 690.  "Demonstrating that the municipality itself caused or is implicated in the constitutional violation is the touchstone of establishing that a municipality can be held liable for unconstitutional actions taken by municipal employees." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 124–25 (2d Cir. 2004) (emphasis added).

Significant here, a "municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [§ 1983] on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691 (emphasis in original).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [§ 1983]." *Id.* at 694.  When a plaintiff relies upon a city employee's

single tortious decision, the court's inquiry focuses on whether the "actions of the employee in question may be said to represent the conscious choices of the municipality itself." *Amnesty Am.*, 361 F.3d at 126. Such an action provides a basis for municipal liability where it is "taken by, or is attributable to, one of the city's authorized policymakers." *Id.* In other words, "municipal liability under [§ 1983] attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122–23 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). Finally, a municipal policy cannot generally be gleaned from a single incident. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy[.]").

Some courts have identified four ways that a plaintiff may demonstrate a government "policy or custom": "[B]y alleging the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Gomez v. City of Norwalk*, No. 3:15-CV-1434 (MPS), 2017 WL 3033322, at *3 (D. Conn. July 17, 2017) (quotations omitted).

Here, Plaintiff's allegations as to the City's policy or custom of intentional discrimination are wholly conclusory. First, Plaintiff does not identify *any* other instances of the City failing to adequately investigate a death or to notify decedents' families of their deaths, let alone failures that may have been attributable to the decedents' race. The Complaint asserts in summary fashion that "[t]he Police Department has a policy and custom of allowing such deprivation." Compl., ECF No. 1, ¶ 76. But a "[p]laintiff cannot merely allege the existence of a municipal policy or custom . . . [she] must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (quotation omitted) (collecting cases). Because Plaintiff has not alleged a pattern of Bridgeport police failing to investigate the deaths of African American women and/or failing to notify their families, it is difficult for Plaintiff to successfully make out a *Monell* claim. *See Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) ("[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]."). As discussed above, when a plaintiff relies upon a city employee's single tortious decision to show a policy or custom of discrimination, the court's inquiry focuses on whether the "actions of the employee in question may be said to represent the conscious choices of the municipality itself." *See Amnesty Am.*, 361 F.3d at 126. Where, as here, a plaintiff attributes the constitutional deprivation to a lower-level municipal employee, then she must plausibly allege that a higher-ranking official at the policy-making level either ratified or approved of the subordinate's actions. *See id.* But Plaintiff does not allege any instance where higher-ranking City officials adopted or approved of the decisions of the investigating officers in Ms. Rawls' case. To the contrary, Plaintiff includes in her allegations the issuance of a press release by the mayor of Bridgeport about the investigation on January 30, 2022, in which the mayor announced the

suspension of two of the investigating officers for their "failure to follow police policy."  Compl., ECF No. 1, ¶ 55.  These allegations weigh against an inference that the City had a policy or custom of discriminating against the families of African American women in death investigations as alleged.[5]

Plaintiff's attempt to make out a *Monell* claim through a failure-to-train theory fares no better.  To successfully allege a failure to train, the plaintiff must establish "not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that there was a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation."  *Amnesty Am.*, 361 F.3d at 129 (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).  Plaintiff has provided no allegations of the City's training programs, nor has she "advanced any theory as to how a training deficiency caused" the inadequate investigation into Ms. Rawls' death or the failure to notify Plaintiff of Ms. Rawls' death.  *See id.* at 130.  And all of Plaintiff's allegations regarding the City's failure to train are similarly conclusory.  *See, e.g.*, Compl., ECF No. 1, ¶¶ 57–58 ("[T]he City and the Police Department engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees, which was a moving force behind the violation of Plaintiff's rights . . . .").

---

[5] Plaintiff's opposition purports to identify parts of the Complaint that adequately allege a policy or custom; but the excerpts she includes are archetypical of conclusory allegations that cannot sustain a claim under Rule 12(b)(6). *See* Compl., ECF No. 1, ¶ 56 ("[T]he policies, usages, practices, procedures and rules of the City . . . included . . . intentionally failing to properly investigate the death of black and African Americans."); *id.* ¶ 58 ("The Defendant City[] . . . having a de facto policy of negligently and/or intentionally failing to properly investigate the death of black and African Americans . . . is a violation of the Decedent's civil rights.").

Thus, Plaintiff's § 1983 claim in her individual capacity is dismissed for failure to plausibly state a claim.[6]  This dismissal is without prejudice, and the Court grants Plaintiff leave to amend if she believes there are specific facts that could be alleged to adequately allege *Monell* liability.

II.    Count 2: Title VI Race Discrimination

Plaintiff next alleges that the City and BPD, as a recipient of federal funds, violated Title VI of the Civil Rights Act, 42 U.S.C § 2000d.

Title VI[7] "prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012). The statute only prohibits intentional discrimination. *Id.*; *see also Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) ("[I]t is similarly beyond dispute . . . that [42 U.S.C. § 2000d] prohibits only intentional discrimination.").  Consequently, "[a] substantive violation of Title VI occurs when '(1) . . . there is racial or [other prohibited] discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance.'" *Rafi v. Yale Univ. Sch. of Med.*, No. 3:14-CV-1582 (VAB), 2017 WL 3205548, at *11 (D. Conn. July 27, 2017) (quoting *Baker v. Bd. of Regents*, 991 F.2d 628, 631 (10th Cir. 1993)); *see also Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 300 (D. Conn. 2009).  "To plead a sufficient discrimination claim under Title VI, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Bhatnagar v. Parsons Sch. of Design at the New Sch.*, No. 20-CV-2321 (LGS), 2021 WL 2333243, at *2 (S.D.N.Y. June 8, 2021) (quotations omitted); *see Ikedilo v. Statter*, No. 19-

---

[6] The Court herein offers no assessment of whether § 1983 claims against the individual officers would be viable.

[7] Title VI provides in full: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.

CV-9967, 2020 WL 5849049, at *8 (S.D.N.Y. Sept. 30, 2020) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).

"In certain circumstances, courts view actions of a third party as intentional violations by the funding recipient itself." *Zeno*, 702 F.3d at 664 (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999)). For instance, in the educational setting, public school districts may be exposed to liability under Title VI for the discriminatory actions of teachers or students, if the school district is found to have been "deliberately indifferent" to that discriminatory harassment. *See id.* at 665 (collecting cases). A plaintiff may plead deliberate indifference on the part of a Title VI funding recipient if they establish: (1) "substantial control" of the funding recipient over the third party, (2) "severe, pervasive, and objectively offensive" conduct that is discriminatory in effect, (3) actual knowledge by the funding recipient's decisionmakers, and (4) "deliberate indifference" to the discriminatory harassment in the recipient's response. *See id.* (citing *Davis*, 526 U.S. at 643–50).

Against these requirements, it is manifest that Plaintiff's conclusory allegations do not plausibly state a claim for intentional discrimination under Title VI against the City. Without any supporting factual allegations, the Plaintiff alleges "Defendant's failures were because of Brenda's race," and "Defendant intentionally . . . conducted a pseudo-death investigation into Brenda's death due to the fact that the Decedent was black." Compl., ECF No. 1, ¶¶ 63, 79. "Title VI . . . require[s] that intentional discrimination be alleged in a non-conclusory fashion," *Clyburn*, 33 F. App'x at 555; these allegations are insufficient to clear that hurdle. *See Idlibi v. New Britain Jud. Dist.*, No. 3:22-CV-1374 (JAM), 2023 WL 6216810, at *4 (D. Conn. Sept. 25, 2023) (dismissing Title VI claim where plaintiff failed to allege non-conclusory facts to support his claim of intentional discrimination). And while Plaintiff does include allegations of a factual, non-

conclusory nature, they do not, of themselves, allow for an inference that Defendant's conduct, through the employee officers, was motivated by a discriminatory intent.  For example, Plaintiff alleges that Defendant failed to "conduct a timely or meaningful investigation into Brenda's death," by failing to interview and follow up with the man who had last seen her alive, and by failing to timely collect "key pieces of evidence, including, but not limited to, blood at her home, and on her front screen door, her clothes, her cell phone, any food and beverages, cups or glassware she consumed shortly before her death."  Compl., ECF No. 1, ¶ 93.  It may very well be the case that Defendant, through the third-party police officers, negligently—or even incompetently or intentionally—failed to adequately investigate Ms. Rawls' death, but Plaintiff has provided no non-conclusory allegations from which to infer that these failures were on account of Ms. Rawls' race.  For instance, Plaintiff has not included allegations that would provide direct evidence of discrimination, such as racially discriminatory comments made by the Bridgeport police officers. Nor does she allege that families of non-Black decedents were afforded timely notification of the decedent's death and a better and more thorough investigation.  *See Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022) ("[D]iscriminatory intent can be shown by either direct evidence of discriminatory animus or circumstantial evidence of such animus, including by showing disparate treatment among similarly situated [persons]." (applying Title VII[8])); *e.g.*, *Shore v. Mirabilio*, No. 3:16-CV-2078 (VLB), 2019 WL 13293059, at *8 (D. Conn. Mar. 8, 2019) (dismissing Title VI claim where plaintiff alleged adverse action taken against her but "the facts pleaded do not support the inference that [defendant] was biased"); *Idlibi v. Conn. Dep't of Pub. Health*, No. 3:23-CV-

---

[8] Courts have long interpreted the substantive discrimination provisions in Title VI, Title VII, and Title IX in tandem with one another.  *See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102–03 (2d Cir. 2022) (summarizing framework under these provisions); *Othon v. Wesleyan Univ.*, 612 F. Supp. 3d 35, 48 (D. Conn. 2020); *see also Zeno*, 702 F.3d at 665 n.9 ("Historically, the Supreme Court has applied parallel analyses to claims brought under Title IX and Title VI.").

353 (JAM), 2024 WL 920728, at *6 (D. Conn. Mar. 4, 2024) (dismissing Title VI claim where plaintiff "has not alleged any non-vague or non-conclusory facts to suggest that the [defendant] took any adverse action against him because of his national origin or religion"), *aff'd*, No. 24-720, 2024 WL 4645698 (2d Cir. Nov. 1, 2024).

Absent sufficient factual allegations from which a discriminatory intent on the part of the officers may be inferred, it is a foregone conclusion that the additional requisites for imputing liability to the City—*i.e.*, knowledge of the discrimination and deliberate indifference thereto—cannot be met. The Court therefore dismisses Plaintiff's Title VI claim against Defendant without prejudice, and grants leave to amend if Plaintiff believes there are additional facts which could be pled to satisfy the elements of this claim as identified above.[9]

III.    <u>Count 3: Intentional Infliction of Emotional Distress</u>

Plaintiff brings a common-law claim for intentional infliction of emotional distress ("IIED") against the City, for the alleged acts of officers of the BPD. Plaintiff has failed to plead adequate facts to establish an IIED claim under Connecticut law.[10] In Connecticut, to state a claim of intentional infliction of emotional distress, Plaintiff must allege: (1) that Defendant intended to inflict emotional distress or knew or should have known that such distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that Defendant's conduct was the cause of Plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was

---

[9] The Court has not discussed the adequacy of the allegations on the issues of whether the City had "substantial control" over the third-party officers or whether the discriminatory conduct was "severe, pervasive, and objectively offensive," but any Amended Complaint would be required to sufficiently support these elements as well.

[10] Although neither party addressed the issue in their briefing, Connecticut law is clear with regard to municipal liability for the intentional torts of its employees. Section 52-557n(a)(2)(A) excludes from municipal liability "[a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct." Conn. Gen. Stat. § 52-557n(a)(2)(A). "[A] municipality cannot be held liable for the intentional conduct of its employees under Conn. Gen. Stat. § 52–557n." *Milardo v. City of Middletown*, No. 3:06-CV-1071 (DJS), 2009 WL 801614, at *10 (D. Conn. Mar. 25, 2009). Thus, although not argued, it appears that the City would be statutorily immune from Plaintiff's IIED claim.

severe.  *See Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)).  Extreme and outrageous conduct is defined as conduct that "exceeds all bounds usually tolerated by decent society."  *Crocco v. Advance Stores Co.*, 421 F. Supp. 2d 485, 503 (D. Conn. 2006) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003)).  Whether "conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court."  *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (quoting *Johnson v. Chesebrough-Pond's USA Co.*, 918 F. Supp. 543, 552 (D. Conn. 1996)).

While there is little question that the allegations speak very poorly of the Bridgeport police officers involved in the investigation of Ms. Rawls' death, Plaintiff's allegations regarding the City's conduct simply do not reach the threshold level of conscience-shocking conduct.  The allegations in the Complaint—that Bridgeport Police officers "failed to provide even the basic minimum effort of a proper death investigation" for Ms. Rawls; that they failed to follow protocol; that they failed to notify Plaintiff of Ms. Rawls' death, Compl., ECF No. 1, ¶¶ 104–05— individually and in the aggregate are not "extreme and outrageous" and do not "exceed all bounds usually tolerated by decent society."  Again, these allegations, if proven, would speak poorly of the professionalism and competence of these officers, but they do not so "shock the conscience" as to constitute intentional infliction of emotional distress.  *See, e.g.*, *Carone v. Mascolo*, No. 3:06-CV-1094 (DJS), 2007 WL 2318818, at *5 (D. Conn. Aug. 14, 2007); *Doe v. Town of Greenwich*, 422 F. Supp. 3d 528, 545 (D. Conn. 2019).

Defendant's motion to dismiss the intentional infliction of emotional distress claim is granted.  Count 3 is dismissed with prejudice.

IV.    Counts 4 and 5: Negligent Infliction of Emotional Distress and Negligence

Lastly, Plaintiff brings two claims for negligent infliction of emotional distress (NIED) and negligence as against the City.  As a threshold matter, the Court agrees with Defendant that Count 5 (negligence) is duplicative of Count 4 (NIED), and Count 5 must therefore be dismissed. "Duplicative claims shall be dismissed when they are based on identical conduct and seek the same relief." *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp. 3d 348, 362 (E.D.N.Y. 2016) (collecting cases).  The basis for Plaintiff's NIED claim is that the City failed to conduct a proper death investigation and failed to properly notify Plaintiff of Ms. Rawls' death, that the City had a duty to Plaintiff to do so, and that the City's negligent failure to do so resulted in emotional distress to Plaintiff.  *See* Compl., ECF No. 1, ¶¶ 111–16.  Plaintiff makes the exact same allegations—sometimes with verbatim language—in supporting her claim for negligence against the City.  *See id.* ¶¶ 118–25.  The only substantive difference between these two counts is a conclusory allegation in Count 5 that the City's actions caused her physical harm, with no elaboration or specifics as to the nature of that physical harm.  *Id.* ¶ 128.  There are no factual allegations of misfeasance beyond those asserted in the NIED claim.  *See Donald Dean & Sons, Inc. v. Xonitek Sys. Corp.*, 656 F. Supp. 2d 314, 323 n.12 (N.D.N.Y. 2009).  The Court therefore grants Defendant's motion to dismiss Count 5 of the Complaint as duplicative of Count 4 and considers Plaintiff's allegations of negligence in connection with her NIED claim below.

"A municipality's potential liability for its tortious acts is limited by the common law principle of governmental immunity . . . .  Governmental immunity, however, is not a blanket protection for all official acts." *Heigl v. Bd. of Educ.*, 218 Conn. 1, 4 (1991).  "[A] municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts . . . .  Governmental acts are performed wholly for the direct benefit of the public

and are supervisory or discretionary in nature . . . [M]inisterial acts are performed in a prescribed manner without the exercise of judgment or discretion . . . ." *Elliott v. City of Waterbury*, 245 Conn. 385, 411 (1998) (citations and internal quotations omitted). "Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." *Doe v. Petersen*, 279 Conn. 607, 614–15 (2006) (internal quotations and citations omitted).

Conn. Gen. Stat. § 52-557n codifies, in part, these common-law principles of governmental immunity for municipalities, and it limits a municipality's liability for its tortious acts or the tortious acts of its employees consistent with these principles. *See Elliott*, 245 Conn. at 407–08. Specifically, Conn. Gen. Stat. § 52-557n provides for the liability of municipalities for the "negligent acts or omissions of such political subdivision or any employee," except for acts or omissions "which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. § 52-557n. Accordingly, to ascertain whether governmental immunity applies to the Plaintiff's negligence claims, the Court must determine whether the City's, or its officers', alleged acts or omissions were discretionary or

ministerial in nature. *See Gordon v. Bridgeport Hous. Auth.*, 208 Conn. 161, 166–70 (1988). When a municipal employee's actions are discretionary in nature, governmental immunity attaches unless one of three exceptions apply.

Plaintiff does not address the issue of whether a police officer's acts of investigating a person's death or notifying their next of kin are discretionary or ministerial, but it is clear to this Court that the manner and means of an officer's investigation of a death involves discretionary acts. *See Ancona v. Samsel*, No. 3:16-CV-172 (MPS), 2017 WL 4765641, at *8 (D. Conn. Oct. 20, 2017); *Ventura v. Town of East Haven*, 170 Conn. App. 388, 405 n.18 (2017) ("Paramount to an officer's discretion is the ability to determine how to pursue an investigation . . . ."), *aff'd*, 330 Conn. 613 (2019); *see also Gordon*, 208 Conn. at 179 ("[T]he great weight of authority [holds] that the operation of a police department is a discretionary governmental function.").

Regarding a police officer's duty to notify next of kin, prior to the passage of Conn. Gen. Stat. § 7-294mm (which requires police to notify next of kin within 24 hours, and became effective on October 1, 2022), there is little case law on whether such a common-law duty exists in Connecticut, let alone whether it is discretionary or ministerial. Notwithstanding, determining whether a duty is discretionary or ministerial is a question of law for the court; to establish that a duty is ministerial, the plaintiff must "point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, by its clear language, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion." *Ventura*, 330 Conn. at 631 (quotations omitted). Plaintiff alleges that the Bridgeport Police's failure to notify her "was not conducted properly and according to Department policy," Compl., ECF No. 1, ¶ 54, but she does not identify any specific policy or rule of the BPD that the officers allegedly violated. Indeed, Plaintiff advances no argument that next-of-kin notification is ministerial in

nature.  Further, the two trial court decisions that the Court has identified both held that a police officer's act of notifying next of kin was discretionary.  *Fanfarelli v. City of West Haven*, No. NNH-CV-99-0430429-S, 2002 WL 316623444, at *5 (Conn. Super. Ct. Nov. 7, 2002) ("There is no evidence in this case that a duty to notify the next of kin, if it exists, is to be performed in a prescribed manner without the exercise of judgment or discretion.  Therefore, any duty, on the part of the defendants to notify the plaintiffs would fall under the rubric of discretionary acts."); *Est. of Gadway ex rel. Gadway v. City of Norwich*, No. KNL-CV-05-4003307-S, 2008 WL 5220566, at *7 (Conn. Super. Ct. Nov. 14, 2008) ("In the present case, the alleged duties of Norwich may be considered discretionary in nature when there was no established policy or procedure in the Norwich Police Department for notification of the next-of-kin.").  Thus, in the absence of allegations which identify a specific policy which clearly prescribes the manner or timing of next-of-kin notification, and allegations that officers failed to act in accordance with those prescribed procedures, the Plaintiff's claims are subject to dismissal on the basis of governmental immunity.

Plaintiff's claim therefore fails unless she can establish an exception to the application of governmental immunity.  There are three exceptions to governmental immunity, each of which "represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force."  *Odom v. Matteo*, No. 3:08-CV-1569 (VLB), 2010 WL 466000, at *5 (D. Conn. Feb. 3, 2010) (quoting *Petersen*, 279 Conn. at 615).  First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure; second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and third, liability may be imposed when the circumstances make it apparent to the public officer that his or

her failure to act would likely subject an identifiable person to imminent harm.  *See Roguz v. Walsh*, No. 09-CV-1052 (TLM), 2012 WL 6049580, at *8 (D. Conn. Dec. 5, 2012).

Only the third exception is at issue with respect to this NIED claim.  The identifiable person-imminent harm exception has three requirements: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm . . . .  All three must be proven in order for the exception to apply." *Haynes v. City of Middletown*, 314 Conn. 303, 313 (2014) (internal citations omitted).  An imminent harm is one that has a significant and foreseeable risk of occurring. *Purzycki v. Town of Fairfield*, 244 Conn. 101, 110 (1998).  "[W]hether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this narrowly drawn exception to qualified immunity ultimately is a question of law for the courts, in that it is in effect a question of whether to impose a duty of care . . . .  In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim." *Grady v. Town of Somers*, 294 Conn. 324, 351 (2009).  The scope of this foreseeable class of victims is narrow. *Dipane-Saleem v. Gallagher*, No. 3:15-CV-596 (MPS), 2016 WL 1060190, at *8 (D. Conn. Mar. 15, 2016).

The Court agrees with Defendant that the identifiable person-imminent harm exception is not implicated by the Plaintiff's allegations.  First Plaintiff has not alleged that Defendant's conduct subjected her (or anyone else) to imminent harm.  It is not enough that the alleged harm may be foreseeable: "Imminent does not simply mean a foreseeable event at some unspecified point in the not too distant future.  Rather, we have required plaintiffs to identify a discrete place and time period at which the harm will occur." *Bonington v. Town of Westport*, 297 Conn. 297,

314 (2010), *abrogated on other grounds*, *Ventura*, 330 Conn. 613 (2019). The Complaint neither identifies a discrete place or time that harm would take place as a result of the alleged negligently undertaken investigation.[11] Nor does it allege that the BPD had a "specific awareness" of the imminent harm at issue. *See id.* at 314.

On this issue, courts in this state consistently reject the application of the exception to NIED claims.

> "[N]onphysical harm is 'not the type of 'dangerous condition' that rises to a level so as to invoke the imminent harm to identifiable victim exception." *See Borg v. Town of Westport*, No. 3:15-cv-1380 (AWT), 2016 U.S. Dist. LEXIS 109841, 2016 WL 9001021, at *10 (D. Conn. Aug. 18, 2016); *Bento v. City of Milford*, No. 3:13-cv-1385, 2014 U.S. Dist. LEXIS 59079, 2014 WL 1690390, at *6 (D. Conn. Apr. 29, 2014) ("[C]ourts in this state have also held that the imminent harm complained of must be physical in nature in order for the exception to apply."); *Pane v. City of Danbury*, No. CV97347235S, 2002 Conn. Super. LEXIS 3360, 2002 WL 31466332, at *9 (Conn. Super. Ct. Oct. 18, 2002), *aff'd*, 267 Conn. 669, 841 A.2d 684 (2004) (Finding that "[c]ases where plaintiffs allege 'imminent harm' typically involve physical harm rather than emotional distress[,]" therefore finding governmental immunity for the plaintiff's negligent infliction of emotional distress claim).

*Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 121 (D. Conn. 2019). While it is certainly foreseeable that a decedent will have a next of kin, and that the next of kin will experience emotional distress at learning of the decedent's passing, this does not equate with the requisite "specific awareness" that the timing of next-of-kin notification or that the specific investigative steps undertaken by the officers will result in harm to the Plaintiff in the form of emotional distress.

Plaintiff has not pleaded facts sufficient to invoke the exceedingly narrow identifiable person-imminent harm exception, and accordingly, as discussed above, governmental immunity

---

[11] The Complaint points to the Bridgeport Police's failure to appear at a meeting scheduled for December 15, 2021, between the officers and Ms. Rawls' family members. Compl., ECF No. 1, ¶¶ 40–41, 112. However, this meeting admittedly was scheduled by the family members *after* they learned that Ms. Rawls had passed away; thus, this meeting cannot form the basis for the identifiable person-imminent harm exception for an NIED claim premised on the failure to notify the family members of her death.

bars Plaintiff's NIED claims.  Defendant's motion to dismiss Plaintiff's negligent infliction of emotional distress claim is granted.  Count 4 is dismissed with prejudice.

**Conclusion**

As explained above, Defendant's motion to dismiss is GRANTED in its entirety.  All of Plaintiff's claims in her representative capacity are dismissed with prejudice.  In her individual capacity, Counts 1 and 2 are dismissed without prejudice to the filing of an amended complaint. Also in her individual capacity, Counts 3, 4, and 5 are dismissed with prejudice.  Any amended complaint shall be filed on or before March 24, 2025.  If no amended complaint is filed, this case will be closed on March 25, 2025.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of February, 2025.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE